Whyte, J.
delivered the opinion of the Court. The question intended by the counsel to be submitted to the Court upon the record is, whether, when a plaintiff has once [243] given bond with sufficient security for the prosecution of his suit at the commencement thereof, pursuant to the Act 1787, ch. 19, he can afterwards, upon the insolvency of that security, his removal out of the State, or the loss of the prosecution bond, or upon the failure of the security by any other means, not caused by the default of the plaintiff during the pendency of the suit, upon the happening of the contingency of failure, &c. be lawfully ruled by the Court to give new and other security.
It was argued at the bar that a practice had prevailed in the circuit courts of ordering the plaintiff to give new security, upon failure of the security given to the clerk upon the commencement of the suit. On the other side it was argued that this practice, if entitled to that name, was not a general practice, but that instances had occurred where the motion to dis *568 miss, unless new security for costs were given, bad been sustained, and in others where the like motion had been rejected. It was also said that a case each way had occurred in this Court, the motion, being sustained in the one and refused in the other. The result seems to bé that there is no settled practice in the case sanctioned by the Supreme Court; but instances of similar applications experiencing dissimilar determinations, since the establishment of the Chancery courts in this State have occurred in them, and probably with similar results. In those terms of these Courts which have been held by Judge Catron and myself, I am authorized to say that the few applications made have always been refused. Upon the whole, there is no practice of such a character as would authorize, much less compel, this Court to follow it and give to it its sanction, independent of its being supported either by the principles of the common law or by act of Assembly.
Can this application, to dismiss this suit, be supported upon either of those grounds ?
By the principles of the common law “ that courts are always open, and that justice will be denied or delayed to no one,” no actual security for the prosecution of a suit and the payment of costs was required of the plaintiff. His body resident within the jurisdiction of the Court, and [244] amenable to its process, was held in all cases sufficient security; and the only extension (if it may be so called) of the rule in latter times is, in a few cases, under particular circumstances; as in actions of ejectment and qui tam, where the lessor of the plaintiff in the first case and the plaintiff himself in the last is unknown to the defendant; the latter may call for an account of the residence or place of abode of the former, which, if not given, the Court will stay proceedings until security is given for payment of costs. Tidd’s Practice, 476, 477; 1 Strange’s Rep. 681, 697, 705. Also in ejectment, if the lessor of the plaintiff is an infant resident abroad, or dead, proceedings will be stayed until a responsible person undertake for the payment of costs; and generally where the plaintiff resides abroad, or is out of reach of the process of the Court, the proceedings will be stayed until his return, or security is given for the payment of the costs. Tidd’s Practice, 478, 479; Cowper’s Rep. 24; 1 Term Rep. 491.
The principles of the common law govern and direct the’ practice in equity on this point, where it is held that the body of the plaintiff, or, if there are several plaintiffs, the body of one of them resident 'within the jurisdiction of the Court is a sufficient security for the costs. An application to the Court of Clfancery for security for costs, founded on the fact that the plaintiff is gone abroad out of the jurisdiction of the Court, is not sufficient to sustain the application, unless it further appears that the party has gone abroad with the intention of making his residence there; and the application must be made also at the earliest opportunity afterwards, or after the knowledge of absence has come to the defendant making such application. *569 Craig v. Bolton, 2 Br. Ch. Rep. 609; Green v. Charnock, 3 Br. Ch. Rep. 371; Hoby v. Hitchcock, 5 Ves. Rep. 699; Walker v. Easterly, 6 Ves. Rep. 612, 10 Vesey, 287; White v. Greathead, 15 Ves. Rep. 2; Dyott v. Dyott, 1 Maddox’s Rep. 187.
Thus we see by the principles of the common law, governing the courts both of law and equity, a plaintiff shall not have his cause turned out of court for want of security [245] for costs, or from his inability to give it, if he is personally resident within the jurisdiction of the Court, and amenable to its process. It remains to be seen what alteration has been made in this respect by the Act of 1787, ch. 19. The first section enacts that the clerk, before issuing any writ or leading process, shall take sufficient security of the party to prosecute, and in case of failure to pay all costs, &c. The second section requires the clerk to enter in a book the writ or process issued, the names of the parties with the securities and their places of abode respectively, and have the same before the judge of the Court, subject to the examination of the Court. Section 3 enforces the performance by the clerk of his duty in taking the security prescribed by the first section, under the penalty of £100, payable by him to the defendant, and £50 to the person sui'hg for the same.
This Act is referred to in the argument as the ground upon which the application to dismiss a suit for not giving a second time security for the costs is made, and is relied on as affording a sufficient warrant for the courts in the exercise of this power. Does the Act give the power claimed for it ? The true construction of the Act must be derived from its words and spirit. The words of the Act give no such power. A particular case of grievance and inconvenience in conducting law proceedings is stated by the preamble, for which the enacting clause applies the remedy; not in general terms laying down the principle guiding the relief, and leaving the case as they may or may not come within the purview of the Act, but a specific remedy is given, single, certain, and definite in its nature, admitting of no latitute of construction in making the application, and seemingly incapable of being misunderstood.. Such is the letter of the Act; and by what rule of construction can it be extended beyond the specific remedy, and be said that its spirit is not expressed by the letter ? Statutes are framed in modern times very differently from what they anciently were; they are now considered as plainly expressive of the whole will of the Legislature on the subject, and what is not stated in the statute is not intended by the [246] law-makers. In the present case, the Act introducing an alteration in the common law must be construed as prescribing the extent of the alteration ; and the Legislature having the whole matter before them ■have said, “Thus far we will go, and no farther.” After the provision .of this Act has been complied with by the plaintiff in giving a prosecution bond with security before the issuing of the writ, it is wholly gratuitous to *570 say that the courts have the power to add other provisions to it, and make other and further alterations in the common law.
The assumption of such a power by the courts, as is contended for by the counsel of the defendant in error, is not only unwarranted by the rules laid down in the books for the construction of statutes, but is repugnant to the spirit of the common law, Magna Charts, and our own Constitution, which last says “ that all courts shall be open, and every man for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law, and right and justice administered without sale, denial, or delay.” Independent of these cogent reasons, the inexpediency of giving such a power (and therefore not to be inferred) is well illustrated by the record before the Court, wherein it appears that the plaintiff has been laboring for years in different courts of his country to have his alleged rights established and justice administered to him; and when he is about to attain this much-desired and long-looked-for event at the suggestion of the defendant that he is unable to pay the costs if the cause should go against him, his suit is thereupon dismissed because he is not able now, after a protracted litigation of seven years, to give new security for costs; when, in all probability, his present inability' has been caused by the delays of the defendant, and the accumulation of costs (the consequence of these delays), which the record shows in this case amount to $ 693.
But the present case is not the only one where such a practice would operate injustice in the extreme ; its character, from its very nature (whatever may be the case), must in general, if not always, be that of injustice. Suppose the least favorable case for the plaintiff, to wit, that he [247] is in the wrong, and would of course be cast at all events, the costs in this case would be no object to either party, not to the plaintiff for his inability, nor to the defendant, for the judgment of dismission exempts him. But grounds of dissatisfaction exist on the part of the plaintiff, in being denied the privilege and satisfaction of having his cause tried by the tribunals of his country. Suppose the case doubtful, which of the parties ought to succeed ? in this case the plaintiff might and would justly complain that he was deprived of the common benefit of the law; and an injury would also be done to the witnesses and officers of the Court, by depriving them of the alternative of a double case, which might eventuate in their favor by a decision against the defendant, which would give them their costs.
But the most common case, and the one which it is believed originated, and still continues to urge such applications, is where the right is unquestionably with the plaintiff, and where the only defence against that right is the success of the motion to give new security; and it very often occurs where, by force or fraud, the defendant has obtained possession of the plaintiff’s property, and where the continued operation of the defendant’s injustice, *571 always incapacitating the plaintiff, forever secures the defendant from exposure and restitution.
Can it be said in these cases, or even in any ease, that dismissing a plaintiff’s cause from court upon the casualty of the failure of the security given pursuant to the Act of 1787, ch. 19, because he is unable to give security a second time for costs, that he enjoys the protection and benefits secured to him by the Constitution ? Can he be said, in the language of that instrument, “ to have all the courts open to him, and for an injury done to him in his lands, goods, person, or reputation, he has remedy by due course of law, and right and justice administered to him without sale, denial, or delay ? ” It is believed it cannot be so said.
The sustaining of such a motion is in its effect a most cruel engine of oppression wielded against the poor and the unfortunate, with the aggravation of having the sanction of a court of justice. And we are all of opinion that whatever [248] practice of this kind has heretofore obtained in the courts of this State, it should be henceforth discontinued in all of them, as it has already been done in some.
The judgment of dismission rendered by the Circuit- Court must be reversed, and the cause remanded to the Court from whence it came, to be proceeded in according to law, without requiring new security.
Judgment reversed.